IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DUNG TRI NGUYEN,

    Petitioner,

v.

MIKE EVANS, Warden, el al.,

    Respondents.

    /

No. C 06-04630 JSW

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Now before the Court is the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Dung Tri Nguyen ("Petitioner"), a prisoner of the State of California. After careful consideration of Petitioner's claims on the merits, the petition for writ of habeas corpus is DENIED.

## PROCEDURAL BACKGROUND

On June 13, 2003, a jury found Petitioner guilty of assault with a deadly weapon, attempt to dissuade a witness, and assault by means of force likely to commit great bodily harm. The jury also found that Petitioner committed the crimes for the benefit of a criminal street gang. On the same day, Petitioner was sentenced to a total determinate term of 16 years followed by an indeterminate term of 14 years to life, and to an additional determinate term of two years and eight months in other cases.

Petitioner appealed his convictions, and the Court of Appeal affirmed the judgment of

the trial court on August 29, 2005. The California Supreme Court denied Petitioner's request for review on November 2, 2005. The United States Supreme Court denied Petitioner's petition for writ of certiorari on April 17, 2006. Petitioner filed his petition for writ of habeas corpus in this Court on July 28, 2006.

## FACTUAL BACKGROUND

The facts underlying the charged offenses as found by the Court of Appeal of the State of California are set forth as follows:

> Around 1:00 a.m. on July 21, 2001, Tuan Pham drove to the Dong Hing Restaurant in San Jose to pick up his friend Thy Thy Pham, who worked there.[1] While Tuan waited for Thy Thy, a man approached him and asked for a cigarette. Tuan said he had none. The man walked away but returned and asked Tuan to get out of the car. Tuan got scared and declined. The man walked away but came back carrying a crowbar and accompanied by five or six Vietnamese men, including defendant. The man threatened to break a window if Tuan did not get out of his car. Tuan refused, and the man smashed a window, pulled Tuan from the car, and hit him with the crowbar. The man also smashed another window. The other men, including defendant, beat Tuan. After the attack, Tuan fled in his car.
>
> Sometime after Thy Thy had called Tuan to come pick her up, she saw him in the parking lot surrounded by several Vietnamese men. She continued to clean the restaurant and later saw Tuan drive away. The other men ran to their cars and also drove away. Minutes later, Tuan returned. Thy Thy saw the broken windows and noticed that Tuan's head was bleeding and his cheek was swollen.
>
> Tuan was scheduled to testify against one of his assailants Sun Nguyen on January 7, 2002. Two days before, on January 5, 2002, Thy Thy saw defendant with around 10 other people at the Dong Hing Restaurant. Defendant asked her where Tuan was. When she said she did not know, defendant told her to say "Hi" to Tuan for him. A little later, Tuan entered the restaurant, but when he saw defendant, he left. Defendant and his friends followed him. Outside, one of them, a man named Vin, pushed Tuan against a wall and asked if Tuan's "brothers were cops" and why he was "hanging out with cops." Defendant and the others then attacked Tuan. Thy Thy testified that she went outside and saw people surrounding Tuan. She saw some blood on the wall and called the police. When they arrived, the group around Tuan dispersed. She saw Tuan in the restaurant with a bloody nose.
>
> Sergeant Shawny Williams, a detective in the San Jose Police Department's Gang Unit, testified as an expert on Asian Criminal street gangs. During his investigation of the assaults on Tuan, he learned about a gang called Tai Rau, which he described as an "informal association" that had been in existence for about two years. Based on conversations with victims, witnesses, and gang members, he opined that Tai Rau had between 10 and 15 members, and its leader was a man named Tai Nguyen. Tai Rau refers to both Tai Nguyen and his gang.

---

[1] For clarity and convenience we refer to the Tuan Pham and Thy Thy Pham by their first names.

2

Sergeant Williams testified that the gang's primary activities involved assaults with deadly weapons, witness intimidation, drug trafficking, and bank fraud or theft. In particular, he testified about four criminal incidents. On June 14, 2001, Thuong Duc Nguyen entered Lee's Noodles armed with a machete. He swung it at Vuong Bui, and then he and his friends chased Biu down the street. Thuong Duc Nguyen, a Tai Rau member, was later convicted of assault with a deadly weapon. On July 13, 2001, a group of Tai Rau gang members, including Tai Nguyen, Thuong Nguyen, Son Nguyen, and Vin Hoang, assaulted Benny Sovath with a bottle at the Rendezvous Café. Tai Nguyen was later convicted of assault. On July 21, 2001, Son Nguyen, Nguyen Tran, Thuong Nguyen, and defendant, among others, committed the assault against Tuan at the Dong Hing Restaurant. Tuan identified defendant as one of his assailants and said defendant had tattoos on his arms. Further investigation revealed to Sergeant Williams that all of the assailants were members of Tai Rau. On October 15, 2001, Vin Hoang and others confronted Benny Sovath about testifying in the case against Tai Nguyen. Sovath fled. Later he failed to show up for the preliminary hearing and had to be brought in. Michael Phan and Son Nguyen were later convicted of assault and witness intimidation. On January 29, 2002, Vin Hoang knocked a woman down at the Pho Kim Le Restaurant. Michael Phan and Son Nguyen made eye contact with Vin Hoang, and when they left the restaurant, Vin Hoang and others attacked them.

Sergeant Williams testified that defendant has tattoos of a panther, tiger, and dragon on his arms and shoulder. He also has a tattoo that reads, "Viet Boy." Defendant admitted being a member of the Viet Boy gang, which originated in Southern California and had chapters in Oakland and San Jose. Sergeant Williams explained that sometimes members of one gang are also members of other gangs. For example, he said that many members of Tai Rau, including Thuong Nguyen, also claim membership in AKA -- i.e. "'Asians kicking ass.'" Thus, the fact that defendant claimed Viet Boy membership did not change his opinion that he was also a member of Tai Rau. "What is important in this case is he committed crimes in association with members of the Tai Rau gang, which is enough for us to validate him as a Tai Rau gang member." He explained that often Asian gangs will "hook up together to form a gang within itself. Looking at the members that formed the Tai Rau gang, it was almost an allstar [*sic*] cast of gang members. They were more mature gang members that somehow had ties with other gangs. For example, Tai Nguyen [previously] was a member of Dragon Boys, a San Jose gang."

Given the style of the attack and the importance that having a reputation plays in gang culture, Sergeant Williams opined that the assaults against Tuan were committed for the benefit of Tai Rau.

(Answer, Ex. 3 (brackets as in opinion).)

**STANDARD OF REVIEW**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Rose v. Hodges,* 423 U.S. 19, 21 (1971). Because the petition in this case was filed after the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became effective,

3

AEDPA's provisions apply. *See Little v. Crawford,* 449 F.3d 1075, 1079 (9th Cir. 2006) (citing *Woodford v. Garceau*, 538 U.S. 202, 207 (2003)).

Under AEDPA, which provides for a deferential standard of review, a federal court may grant the writ with respect to any claim that was adjudicated on the merits in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Williams (Terry) v. Taylor,* 529 U.S. 362, 413 (2000) (hereinafter "*Williams*"). Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). *Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003). The habeas petitioner has the burden of showing that § 2254(d) does not preclude him from obtaining relief. *See Woodford v. Visciotti,* 537 U.S. 19, 25 (2002).

The United States Supreme Court has determined that "clearly established federal law" is restricted to "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams,* 529 U.S. at 412; *Barker v. Fleming,* 423 F.3d 1085, 1093 (9th Cir. 2005) ("clearly established" federal law determined as of the time of the state court's last reasoned decision"). "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams,* 529 U.S. at 412. The Supreme Court has emphasized that "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Mitchell v. Esparza,* 540 U.S. 12, 17 (2003) (per curiam).

Under the "contrary to" clause of section 2254(d)(1), a federal court may grant the writ only if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases, 'or if it confronts a set of facts that are materially indistinguishable from a decision' of the Supreme Court and nevertheless arrives at a different result." *Early v. Packer,* 537 U.S. 3, 8 (2002) (quoting *Williams,* 529 U.S. at 405-06). A federal court may grant the writ

4

1  under the "unreasonable application" clause of section 2254(d)(1) if the state court identifies the
2  correct governing legal principle from the Supreme Court's decisions but unreasonably applies
3  that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 413.  A federal habeas
4  court "may not issue the writ simply because that court concludes in its independent judgment
5  that the relevant state-court decision applied clearly established federal law erroneously or
6  incorrectly.  Rather, that application must also be unreasonable." *Id.* at 412.  The objectively
7  unreasonable standard is not a clear error standard. *Lockyer,* 538 U.S. at 75-76.

8        A federal court looks to the decision of the highest state court to address the merits of a
9  petitioner's claim in a reasoned decision in order to determine whether the state court's decision
10 is contrary to, or an unreasonable application of clearly established federal law. *LaJoie v.*
11 *Thompson,* 217 F.3d 663, 669 n.7 (9th Cir. 2000).  If the highest state court has summarily
12 denied a petitioner's claim, the habeas court may "look through" that decision to the last state
13 court addressing the claim in a reasoned decision. *Ylst v. Nunnemaker,* 501 U.S. 797, 804-06
14 (1991); *see also* 28 U.S.C. § 2254(d).

15       In this case, the California Court of Appeal denied Petitioner's petition in a reasoned
16 decision. (Answer, Ex. 3.)  The California Supreme court then summarily denied his petition.
17 (Answer, Ex. 4.)  Accordingly, this Court will "look through" the California Supreme Court's
18 decision to the California Court of Appeal's decision in deciding whether the state court's
19 decision is contrary to, or an unreasonable application of, clearly established federal law.

20
21                                               **ANALYSIS**

22       Petitioner raises a single claim for relief.  He argues that the trial court violated
23 his federal confrontation rights by allowing the gang enhancement to be proven by hearsay
24 testimony without an opportunity to confront the declarant.  Although he did not raise this
25 objection during trial, Petitioner alleges that his claim was not waived because *Crawford v.*
26 *Washington,* 541 U.S. 36 (2004), the case under which he is seeking relief, was not available to
27 him at the time of his trial.  Because this Court finds that the Supreme Court's decision in
28 *Crawford* and the Sixth Amendment Right to Confrontation are inapplicable to Petitioner's

5

claim, the Court need not address whether Petitioner waived this issue by failing to raise it at trial.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ..." U.S. Const. amend. VI. In *Crawford,* the Supreme Court clarified that this clause bars admission of testimonial statements of a witness, unless the witness is unavailable and the defendant has had a prior opportunity to cross examine him. *Crawford,* 541 U.S. at 59. However, the Supreme Court made clear that the Confrontation Clause does not bar admission of testimonial statements when they are introduced for a purpose other than to prove the truth of the matter asserted. *Crawford,* 541 U.S. at 59 n.9 ("The Clause ... does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."). Hence, even if the safeguards of unavailability and prior opportunity to cross examine the declarant are not satisfied, a defendant's right to be confronted with the witnesses against him is not infringed by the introduction of a testimonial statement that is offered for any purpose other than to prove the truth of the matter asserted. *Id.*

Petitioner asserts that the trial court's admission of certain statements made by the prosecution's expert witness, Officer Shawny Williams, violated his Sixth Amendment right to confrontation. Namely, Petitioner is alleging that the disclosure of the information Officer Williams received from other gang members and victims before the trial, which he used as the basis of his expert opinion, violated Petitioner's right to confrontation because Petitioner was never given the opportunity to cross examine those witnesses. (Traverse at 9-10.)

During the trial, the prosecutor specifically pointed out that he was not eliciting information from Officer Williams for the truth of the matter. (Answer, Ex. 2B (Transcript on Appeal from the Judgment of the California Superior Court) at 135.) Furthermore, the prosecutor never asked Officer Williams to disclose what a third party said to him. He only asked Officer Williams to disclose the information that helped him form his opinion. (*Id.* at 134-36.) Officer Williams's limited testimony regarding his conversations with others was not offered to prove the truth of the matter as direct evidence against Petitioner. *See* Cal. Evid.

6

1 Code, § 1200, subd. (a) (defining hearsay evidence as "evidence of a statement that was made
2 other than by a witness while testifying at the hearing and that is offered to prove the truth of
3 the matter stated."). The Court of Appeal found that Officer Williams's testimony regarding the
4 basis of his opinion was not hearsay admitted as direct evidence against Petitioner. (Answer,
5 Ex. 3 at 11.) This Court concurs that *Crawford* is inapplicable to his case because Petitioner
6 has not met his burden of establishing that testimonial statements were introduced for the truth
7 of the matter asserted during his trial.

8 Petitioner also relies on *United States v. Ordonez*, 737 F.2d 793 (9th Cir. 1984), for the
9 proposition that an expert may not draw inferences from otherwise inadmissible hearsay.
10 Petitioner's reliance on Ordonez is misplaced. In *Ordonez*, ledgers seized during Ordonez's
11 arrest were admitted into evidence over the defendant's objection, under the co-conspirator
12 exception to the hearsay rule. *Id.* at 797. The trial court did not give any instructions limiting
13 the use of this evidence. An expert testified that a majority of the ledger entries were made by
14 at least four unidentified persons. *Id.* Another expert testified that the ledger entries were
15 business records that recorded cocaine transactions, including a transaction in which Ordonez
16 purchased and possessed cocaine with the intent to distribute it. *Id.* No other evidence was
17 used to support the drug charges against the defendant. *Id.* at 797-98. The Ninth Circuit held
18 that the admission of the ledger entries as direct evidence against the defendant was prejudicial
19 error. *Id.* at 806. The court reasoned that the ledgers were not admissible as admissions,
20 statements of a co-conspirator, or as trustworthy business records, and that the government
21 failed to submit evidence to satisfy the reliability requirement of the Confrontation Clause. *Id.*

22 In contrast to *Ordonez*, the government did not seek to admit the background materials
23 considered by Officer Williams as direct evidence against Petitioner. Instead, the testimony at
24 issue was offered for another purpose -- a non-hearsay purpose -- to establish the bases for
25 Sergeant Williams's opinions. *See* Cal. Evid. Code § 802 (expert witness may relate bases of
26 opinion.) It is well established that gang experts may rely on conversations with gang members,
27 information obtained from victims and witnesses, as well as their personal investigations of
28 gang-related crimes to form their opinions. *People v. Gardeley*, 14 Cal. 4th 605, 618-620

7

(1996); *People v. Duran,* 97 Cal. App. 4th 1448, 1463 (2002); *People v. Vy*, 122 Cal. App. 4th 1209, 1223, n.9 (2004).

This Court agrees with the Court of Appeal that Officer Williams's testimony regarding the basis of his opinion was not presented for the truth of the matter asserted. Petitioner's *Crawford* claim is thus without merit. Accordingly, the Court concludes that the state court's application of clearly established federal law was not objectively unreasonable.

## CONCLUSION

For the reasons set forth herein, the Court hereby DENIES the petition for writ of habeas corpus. A separate judgment shall issue, and the Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: May 5, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE